POLLOCK | COHEN LLP
111 BROADWAY, SUITE 1804
NEW YORK, NY 10006
(212) 337-5361

January 20, 2023

**VIA ECF**

Hon. Katherine Polk Failla
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**MEMO ENDORSED**

Re:   *The Pullman Group v. Bauknight et al.*, No. 22 Civ. 9713

Dear Judge Failla:

We represent Plaintiff The Pullman Group and write in response to Defendants' January 17, 2023 letter ("Def. Ltr.," ECF no. 29) regarding their intended motion to dismiss. The Court has jurisdiction and the claims in the Complaint are viable.

On February 24, 1999, The Pullman Group entered into an agreement with the artist and songwriter James Brown and defendant James Brown Enterprises, Inc. to securitize the future income stream from Mr. Brown's songs and related assets. The Pullman Group has extensive experience in buying, selling, and investing in this type of assets, and owns rights to thousands of songs. In return for giving up income from those assets during the recoupment period of the Pullman Bonds, Mr. Brown received an up-front payment of $26 million. The agreement also provided that The Pullman Group would have the exclusive rights, following recoupment of the Pullman Bonds, to arrange any future refinancing or asset sale of Mr. Brown's assets until at least 2059. Mr. Brown's untimely death in 2006 did not extinguish these exclusive rights. But, in late 2021, the Brown Defendants secretly sold Brown's assets to Defendant Primary Wave Music Publishing for $90 million. Despite knowing of Plaintiff's exclusive right to arrange any such transaction, Defendants prevented The Pullman Group's involvement, and instead retained Shot Tower Capital as the agent to arrange it.[1]

*Diversity Jurisdiction*

With respect to Defendants' newly-filed letter (ECF no. 31) and amended corporate disclosure (ECF no. 32), Plaintiff respectfully suggests that Defendants may provide discovery on this issue (i.e. the relevant contract and the ownership structure). Plaintiff will carefully consider such materials and meet and confer with the Primary Wave defendant(s) as to whether that claim may proceed in federal court.

*Probate Exception*

Plaintiff's complaint seeks a money judgment against all Defendants, who are liable for breaching and interfering with the Pullman Group's exclusive contractual rights. It does not fall within the probate exception to federal jurisdiction, which is narrow and

---

[1] Primary Wave and Shot Tower Capital had knowledge of The Pullman Group's exclusive rights because the agreement was filed and recorded with the U.S. Copyright Office. The Brown Defendants also knew of The Pullman Group's exclusive rights because of prior litigation.

Hon. Katherine Polk Failla
January 20, 2023

has a "limited application." "[S]o long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Lefkowitz v. Bank of New York*, 528 F.3d 102, 106 (2d Cir. 2007) (citations omitted).[2]

*Bollenbach v. Haynes*, 2019 WL 1099704, at *3 (S.D.N.Y. Mar. 8, 2019), does not hold otherwise. The claims there "[w]hatever their precise nature, … essentially sound[ed] in conversion," and plaintiff sought to have returned to her "specifically identifiable" money from certain accounts that she alleged was improperly paid out to others; this was analogous to "[t]he funds of a specific, named bank account," *i.e.* a specific "res" in the custody of a state court. *Id.* Here, in contrast, The Pullman Group does not asset claims for conversion or seek the return of any particular funds.[3]

Further, the exclusive agreement provides that New York courts "shall have full jurisdiction" and litigation "under or in connection with" the agreement "shall be commenced solely in said courts." "A forum-selection clause [must] be 'given controlling weight in all but the most exceptional cases.'" *EMR (USA Holdings), Inc. v. Goldberg*, 2019 WL 5537878, at *7 (S.D.N.Y. Oct. 25, 2019). There is nothing exceptional about a plaintiff having filed a related claim in a probate proceeding. The *EMR* case Defendants rely upon found that *voluntarily* initiating litigation in Texas effected a limited waiver of the forum selection clause, and does not in any way suggest that a mandatory probate filing could have a similar effect.[4]

*Abstention*

"The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction" and "the balance is heavily weighted in

---

[2] Contrary to what Defendants suggest, it is not enough that "the issues involved in Plaintiff's … claims undoubtedly intertwine with the litigation proceeding in the probate courts." *Lefkowitz*, 528 F.3d at 108. *See also Wilmington Tr., Nat'l Ass'n v. Est. of McClendon*, 287 F. Supp. 3d 353, 368 (S.D.N.Y. 2018) (rejecting argument "that the probate exception should apply to the First Cause because it seeks a determination that would dictate how the Estate's assets are to be distributed, aver[ed to be] a purely probate manner. … that is not the relief that Plaintiff seeks here; rather, Plaintiff is asking this Court to enter judgment after determining whether the amount in contracted-for obligations Plaintiff is owned by the Estate under the terms of the Guaranty.").

[3] Defendants also mistakenly rely on *Silk v. Bond*, 2021 WL 4974041, at *3 (C.D. Cal. Oct. 26, 2021), This unpublished decision, which is being appealed, turned on the particular language of the contract, which addressed a "performance-based incentive fee of 15% on savings … Decedent's Estate would realize after his death." *Id.* As a result, "Silk's contract dispute cannot be resolved without first determining the value of the Estate. But the valuation of estate assets is within the province of the probate court and therefore precluded by the probate exception." *Id.*

[4] Plaintiff filed its probate claim in South Carolina to avoid any argument that it was forfeited under the S.C. Probate Code. *See Wilmington Tr.*, 287 F. Supp. 3d at 368 (finding probate exception did not apply and venue was appropriate under NY forum selection clause, even though plaintiff had presented a creditor claim against the Oklahoma estate based on the same guarantee at issue in the S.D.N.Y. proceeding and "commenced an independent action against the Personal Representative for wrongful denial of its creditor claim under Oklahoma probate law in Oklahoma County District Court.")

Hon. Katherine Polk Failla
January 20, 2023

favor of the exercise of jurisdiction". *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). None of these narrow exceptions apply here. "Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Wilmington Tr.*, 287 F. Supp. 3d at 361–62 (citation omitted). The *Wilmington* decision is instructive in rejecting very similar arguments for abstention in favor of a state probate proceeding. *Id.* ("Abstention is inappropriate here: here, no state court order is being challenged and no order to compel action is sought.").

*Merits Arguments*

Defendants' various makeweight arguments concerning their anticipated defenses and the merits of Plaintiff's claims are premature and unfounded.

As to their "nonclaim" argument, even Defendants admit that Plaintiff "asserted a claim during the nonclaim period." (Defs. Ltr. n.5.) Moreover, claims that arose *after* Mr. Brown's death are subject to a different limitations period, which Plaintiff undisputedly satisfied. SC ST § 62-3-803(c). In any event, Plaintiff asserts multiple claims that are not subject to this purported defense.

The complaint unquestionably states a plausible claim based on the plain language of paragraph 7 of the Exclusive Engagement Letter (emphasis added):

> Refinancing or **Asset Sale(s)**. Pullman is granted the **exclusive right**, at its sole discretion, to refinance any future transaction(s) or **asset sale(s)** for owner upon future recoupment of the securities…. This clause shall be interpreted to include all future financings during the greater of owner's life or two future financing periods in addition to the initial financing contemplated by this agreement.

Defendants' tortured reading of this provision as applying for only 3 years and only to "a loan that must repaid," Def. Ltr n.4, is not supported by the words, the context, or the industry understanding of these terms. It certainly cannot form the basis of a motion to dismiss on the pleadings, nor can their argument that Plaintiff's damages calculation is incorrect. And the rule against perpetuities bars certain post-death restraints on *ownership* of property. It has no bearing on Plaintiff's exclusive right to act as the arranger of any sale of Mr. Brown's assets—Plaintiff's involvement would serve to facilitate a transfer of ownership and not to restrict it. In any event, Defendants cannot invoke New York's rule against perpetuities while arguing that New York law does not apply to these issues. Finally, because Plaintiff has more than adequately pleaded the underlying contract claim, the predicate contractual rights for tortious interference claims are also adequately pleaded, as are the other elements.

Thank you for Your Honor's consideration in this matter.

    Sincerely,

    /s/ *Adam Pollock*

    Adam Pollock

The Court is in receipt of three letters from Defendants: (i) a January 17, 2023 letter requesting a conference regarding Defendants' anticipated motion to dismiss (Dkt. #29), (ii) a January 17, 2023 letter requesting, inter alia, a stay of discovery pending the resolution of Defendants' anticipated motion (Dkt. #30), and (iii) a January 20, 2023  letter providing more detail about the grounds for Defendants' anticipated motion (Dkt #31).  The Court is also in receipt of the above letter detailing Plaintiff's opposition to Defendant's anticipated motion.  If Plaintiff wishes to respond to Defendant's January 20, 2023 letter, it may file a supplemental letter, not to exceed three pages, on or before **January 25, 2023**.  Plaintiff may elect to respond to Defendants' additional points orally at the February 3, 2023 conference in lieu of a supplemental letter if that is Plaintiff's preference.

Additionally, the initial pretrial conference currently scheduled for **February 3, 2023** is hereby CONVERTED into a pre-motion conference.  The parties should be prepared to discuss Defendants' anticipated motion to dismiss at that conference.  The parties need not file a joint letter or proposed case management plan in anticipation of the conference.

The Clerk of Court is direct to terminate the motions at docket entries 29 and 30.


Dated:     January 20, 2023          SO ORDERED.
           New York, New York

                                     *Katherine Polk Failla*

                                     HON. KATHERINE POLK FAILLA
                                     UNITED STATES DISTRICT JUDGE